### THE FREDERICK W. STARR NO. 25.

### THE LIGHTER NO. 440.

### CHIARELLO LIGHTERAGE CORPORATION v. 170,000 FEET OF LUMBER et al.

### CHARLES R. McCORMICK LUMBER CO. v. CHIARELLO LIGHTERAGE CORPORATION et al.

### DELAWARE, L. & W. R. CO. v. CHIARELLO LIGHTERAGE CORPORATION et al.

### Nos. 10581, 10724, 10762.

District Court, E. D. New York.

June 3, 1930.

Frederick W. Park, of New York City, for Chiarello Lighterage Corporation.

Single & Single and W. J. Mahar, all of New York City, for Charles R. McCormick Lumber Co.

P. A. Beck, of New York City, for Jules S. Sottnek, Joseph Castellana, and Jules S. Sottnek Co.

Bigham, Englar, Jones & Houston, of New York City (Andrew J. McElhinney, of New York City, of counsel), for Frederick W. Starr No. 25.

John E. Morrissey, of New York City, for the railroad company.

BYERS, District Judge.

On August 7, 1927, the scow Frederick W. Starr No. 25, being alongside the steamship Commercial Spirit, at No. 2 hatch, careened and cast into the slip, in which she was lying, some 170,000 feet of lumber. The scene of this occurrence was the slip between Pier 46 South Brooklyn (at which the steamship was berthed) and Beard's dock adjoining on the south. The steamship was headed inshore, and the lighter had been moved from her berth at the outshore end of Beard's dock, across the slip to the position stated, in the early morning in question.

Further inshore at Beard's dock, lay the lighter Seraphine, and, alongside the latter, the D. L. & W. lighter No. 440. The latter was distant about 15 to 20 feet from the Starr No. 25 at the time of the incident under consideration.

As a result of the spilling of this lumber, the causes above set forth were instituted, that is to say:

(a) In the first named, the libelant seeks to recover for salvage of the lumber which was thus discharged from the Starr No. 25. The Charles R. McCormick Lumber Company, as owner of the lumber, is the claimant, and has impleaded the Starr No. 25 and her owner, because the scow accepted too great a cargo; and Jules Sottnek Company, the stevedore, because the latter is alleged to have overloaded the lighter.

In addition, the claimant asserts that the libelant furnished the scow Starr No. 25 to

carry the cargo of lumber in question, pursuant to a contract to that end, and that the libelant was responsible for the overloading of the lighter.

(b) The second cause is a cross-libel by the McCormick Company against the libelant in the first cause, the stevedore, the scow Starr No. 25 and her owner; the cross-libelant asserts, in substance, what has been stated with reference to the claimant's allegations in the first cause and damages for injuries to the lumber.

(c) The third cause is based upon a libel filed by the owner of the D. L. & W. lighter No. 440 against the libelant in the first cause (which chartered the Starr No. 25), the stevedore, and the Starr No. 25 and its owner. The cause pleaded is the collision damage suffered by the libelant's lighter as the result of the careening and casting loose of the Starr No. 25. The claimant in that cause is the owner of the said Starr No. 25.

By stipulation, the causes were tried together, and are to be the subject of one decree.

█ It will be seen that the reason for the overloading of the scow is the primary and important inquiry, the overloading, itself, being conceded. The responsibility for the mishap once established, the rights and liabilities of the respective parties will fall into obvious channels.

The libelant in the first cause is the Chiarello Lighterage Corporation, having a contract to deliver about 267,000 feet of lumber ex steamship Commercial Spirit, to Albany. The Starr No. 25 was under charter to Chiarello, and the lumber in question was discharged, as to 247,000 feet, on Saturday, August 6, 1927, and stowed on the scow.

There is a consensus of testimony that the Starr No. 25, with that quantity of lumber on board, was safely laden.

Before the operation of Saturday, August 6th, was completed, it is clear that the capacity of the scow to accept that which Chiarello required of her, to accomplish the desired delivery to Albany, was the subject of discussion between the captain of the Starr No. 25, one Freeman, Charles Chiarello, an officer of the chartering company, Castellana, the stevedore, and O'Hea, who was supervising the discharge for the steamship.

Naturally the testimony is conflicting as to what was said, and who participated in the several interviews, and no attempt will be made to rehearse the versions set forth in the record, or to harmonize them. The fact is that the captain was apprehensive on the subject, and spoke to O'Hea and the stevedore about it, sufficiently to raise the question sharply and definitely in their minds. They, in turn, spoke to an officer of the Chiarello Corporation, and the stevedore went so far as to say that he would not stow any lumber in excess of 247,000 feet on the scow, unless the Chiarello Corporation, the charterer, would give him a writing, relieving the stevedore of responsibility for further increasing the burden. This was tacitly promised by John Chiarello, also an officer of the libelant, but never delivered.

The barge captain, Freeman, is a colored man, of not too sturdy a physique or personality, and his misgivings were overborne by Charles Chiarello.

The court would have to be blind to the motives of self-interest and the obvious characteristics of the witnesses to conclude otherwise. A stronger man than Freeman, one who was able to deal at arm's length with Chiarello, would have been more successful in his protest, but, under the circumstances, he did enough, it is found, to cast upon the Chiarello Corporation and Castellana the burden of decision as to whether any more lumber could be safely laden on the scow, after the 247,000 feet had been stowed on Saturday, August 6th.

That Charles Chiarello appreciated this responsibility appears from the testimony of Swenson, captain of the lighter Irving, then in the same slip; Chiarello telephoned him on Saturday afternoon for his advice as to the then safety of the Starr No. 25, with the last load of lumber from the ship, and Swenson said she was all right with that lot, namely, the last of the 247,000 feet.

It becomes important to decide who it was that made the choice to load another 20,000 feet of lumber on the scow, as was attempted on Sunday morning, the 7th. To accomplish this purpose, the Starr No. 25, which had been removed across the slip on Saturday afternoon, was brought back on Sunday morning by employees of the stevedore, assisted by the captain of the scow. The latter probably did no more than make his boat fast in her new position, and clearly did not initiate the removal.

The Starr No. 25 arrived in her new location around 8 o'clock Sunday morning, August 7th, and, an hour later, the final discharge of an additional 20,000 feet of lumber upon her was started; this had proceeded as to 8,000 or 10,000 feet when the Chiarello brothers, Charles and John, arrived,

and took active charge of, and part in, the stowage of so much of the balance `of the 20,000 feet as were taken aboard` before the Starr No 25 careened and` cast the 170,000 feet of lumber into the waters of the slip.

The conduct of these men was consistent only with a consciousness of responsibility for what was going forward.

That responsibility began, on Saturday, when the captain of the scow entered into conversation with Charles Chiarello on the subject of the protest that he had made to O'Hea and Castellana about taking more lumber; it was manifested in the telephone message to Swenson, and it was confirmed by the activities of the brothers on Sunday morning, clearly revealed in the testimony. That responsibility would not have been assumed except for the financial interest that the charterer had in making delivery in Albany of the entire 267,000 feet of lumber in one bottom.

■ The stevedore, Castellana, had no interest to serve by overloading the Starr No. 25. In fact, he must be credited with the knowledge that the stevedore would be answerable in damages for an overloading, unless that result were to come about through the intervention of some other agency. It is found that such agency did intervene, in the person of Charles Chiarello, who, on Saturday, directed the stevedore to stow the additional 20,000 feet of lumber on the Starr No. 25 on Sunday, the 7th, even though it was against the better judgment of Castellana.

In view of all the circumstances which appear to be comprehended in this record, and after observing the witnesses and weighing their testimony, there seems to be the greater reason for holding the stevedore to be without legal fault, than for imposing upon him (them) any responsibility for the decision of Charles Chiarello, acting for the Chiarello Lighterage Corporation.

It results from the foregoing that:

(a) The salvage claim in the first cause is without legal warrant, and the libel must be dismissed with costs.

(b) The cross-libel of Charles R. McCormick Lumber Company, in the second cause, is sustained against the Chiarello Lighterage Corporation, and dismissed as against Jules Sottnek and the Starr No. 25 and her owner.

(c) The libel of The Delaware, Lackawanna and Western Railroad Company against the Chiarello Lighterage Corporation, for damages occasioned to the former's lighter No. 440 by the Starr No. 25, should be sustained, with costs, and dismissed against Jules S. Sottnek and Joseph Castellana, copartners, etc., and the Starr No. 25 and her owner, with costs.

· The subsidiary litigation, the outcome of which is dependent upon the determination here made, should be disposed of by disallowing to the Chiarello Lighterage Corporation any claim for damage to the Seraphine; the Frederick Starr Contracting Company should recover from the Chiarello Lighterage Corporation the damage sustained by the Starr No. 25 by reason of the overloading in question; the claim of the stevedore for stowing the lumber should be paid by the Chiarello Lighterage Corporation.

Settle decree on five days' notice.